IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                                    )
            v.               )
                                    )
ROBERT COLBERT (1)        )    Criminal No. 08-411
NICKY EVANS (3)           )
LAMON STREET (9)        )
JAMARR PHARR (14)       )
DOMINIQUE STEELE (23)   )
DEVON SHEALEY (26)      )

O P I N I O N

DIAMOND, D.J.

On February 12, 2010, a grand jury returned a thirty-seven count Superseding Indictment

against 27 defendants charging, <u>inter alia</u>, a conspiracy to conduct an enterprise through a pattern

of racketeering activity in violation of 18 U.S.C. §1962(d). To date, 21 of the original 27

defendants have entered guilty pleas. Jury selection and trial for defendants Colbert, Evans, Street,

Pharr, Steele and Shealey is scheduled to commence on September 12, 2011.

All parties are well aware of the allegations set forth in the Superseding Indictment and

they need not be stated in detail here. Briefly, Count Two of the Superseding Indictment charges

26 of the 27 original defendants, including all six remaining defendants, with RICO conspiracy in

violation of 18 U.S.C. §1962(d).[1]

---

    [1] In addition to Count Two: Colbert has been charged at Counts 1, 22 and 24 with firearms offenses and at Count 23 with obstruction of justice; Evans at Counts 8 and 9 with firearms offenses; Street at Count 30 with possession with intent to distribute heroin; Steele at Count 26 with assault with a dangerous weapon and at Count 27 with a firearms offense; and, Shealey at Count 6 with assault with a dangerous weapon, at Count 7 with a firearms offense, and at Count 25 with obstruction of justice. Pharr was charged only at Count Two with the RICO conspiracy.

Count Two alleges that two sets of Crips gang members, the Brighton Place Crips and the Northview Heights/Fineview Crips, were operating in concert as an "enterprise" in the Northside area of Pittsburgh.[2] It further alleges that in or around 2002 or 2003, the two gangs formed an alliance in order to expand the enterprise's geographical territory and to increase the number of members associated with the enterprise so as to preserve and protect the power, territory and profits of the enterprise and to eliminate rivalries in each others' territories.

Count Two sets forth over 300 overt acts committed in furtherance of the alleged racketeering activity, including acts relating to: the possession and distribution of controlled substances; the planning and commission of robberies; attempted murder; shootings; the obstruction of official proceedings and obstruction in furtherance of the enterprise; the possession and use of firearms; the provision of monetary support to incarcerated members; and various other miscellaneous acts and discussions relating to the affairs of the enterprise.

Count Two also contains a "special sentencing factor" alleging that each member of the enterprise distributed and possessed with the intent to distribute 50 grams or more of cocaine base, in the form commonly known as crack.

All six of the remaining defendants have filed pretrial motions. In addition, those defendants were provided an opportunity to identify any motion of any co-defendant who no longer is in the case that the remaining defendant wishes to adopt. In total, 117 pretrial motions are pending. The government has filed a consolidated response to the pretrial motions filed by all defendants, and all of the pending motions are ripe for adjudication.

---

[2]   Robert Colbert, Nicky Evans and Lamon Street are alleged to have been associated with the Brighton Place Crips. Jamar Pharr, Dominique Steele and Devon Shealey are alleged to have been associated with the Northview Heights/Fineview Crips.

AO 72
(Rev. 8/82)

# MOTIONS TO DISMISS/STRIKE

1)  **Motions Related to Count Two**

    a)  **Motion to Dismiss Count Two**

Colbert and Shealey have joined in a motion to dismiss Count Two of the Superseding Indictment, which was filed by Lynn Gibson (#1091). Defendants argue that Count Two should be dismissed for failure to comply with Fed.R.Crim.P. 7(c)(1) because it does not properly plead a RICO conspiracy offense under 18 U.S.C. §1962(d). In addition, defendants contend that Count Two should be dismissed because the RICO statute is unconstitutionally vague.

The court first will address defendants' argument that Count Two should be dismissed because it does not sufficiently allege the elements of a RICO conspiracy.

In considering a defense motion to dismiss an indictment, a district court is to accept as true all factual allegations set forth in the indictment. United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990). An indictment that fails to charge all essential elements of a crime must be dismissed. United States v. Cochran, 17 F.3d 56, 57 (3d Cir. 1994).

The Federal Rules of Criminal Procedure require that an indictment be a plain, concise and definite written statement of the essential facts constituting the offense charged. Fed.R.Crim.P. 7(c)(1). An indictment is sufficient if it includes the elements of the offense charged, apprises the defendant of what he must be prepared to defend against at trial, and enables him to plead an acquittal or conviction as a bar to subsequent prosecutions for the same offense. United States v. Rawlins, 606 F.3d 73, 78-79 (3d Cir. 2010); United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007).

AO 72
(Rev. 8/82)

In charging an offense, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007) (quoting United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989)). Accordingly, an indictment may "set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" United States v. Cefaratti, 221 F.3d 502, 507 (3d Cir. 2000) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).

In this case, defendants are charged with violating subsection (d) of 18 U.S.C. §1962, which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [section 1962]." 18 U.S.C. §1962(d). Count Two charges that defendants conspired to violate 18 U.S.C. §1962(c) by conducting and participating, directly and indirectly, in the conduct of the affairs of the enterprise described in the Superseding Indictment through a pattern of racketeering activity consisting of multiple acts of robbery and murder, the distribution of controlled substances and obstruction of justice, all in violation of §1962(d).

To establish that defendants are guilty of violating §1962(d), the government must prove that:

(1)     two or more persons agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity;

(2)     the defendant was a party to or member of that agreement; and

4

(3)    the defendant joined the agreement or conspiracy knowing of its objective to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve the objective of conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity.

Third Circuit Model Criminal Jury Instructions, §6.18.1962D.

Here, the court is satisfied that Count Two is sufficient to charge defendants with a RICO conspiracy. Count Two identifies 18 U.S.C. §1962(d) as the law alleged to have been violated and sets forth all of the essential elements of the offense sufficiently to apprise defendants of the offending conduct. Specifically, Count Two tracks the statutory language and charges that defendants, who were associated with the enterprise, the activities of which affected interstate commerce, knowingly, intentionally and unlawfully conspired to violate 18 U.S.C. §1962(c) by conducting and participating, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity that included multiple acts of robbery and murder, distribution of controlled substances and obstruction of justice. See Document No. 60, ¶U.

More specifically, Count Two contains allegations describing when the enterprise was formed and how long it was in existence, the purposes of the enterprise and the various defendants' respective roles in the enterprise. See Document No. 60, ¶¶A-T. Count Two sets forth 301 overt acts committed by the various defendants in furtherance of the conspiracy. It is also alleged that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the enterprise's affairs. Id., ¶V.

Accepting all of the factual allegations as true, the court is satisfied that Count Two of the Superseding Indictment sets forth, without any uncertainty or ambiguity, all of the elements of

AO 72
(Rev. 8/82)

RICO conspiracy against the defendants sufficiently to enable them to prepare their defense and to ensure that they will not be prosecuted twice for the same offense. Accordingly, defendants' motion to dismiss Count Two for failure to comply with Fed.R.Crim.P. 7(c)(1) lacks merit.

Defendants' argument that Count Two should be dismissed because the RICO statute is unconstitutionally vague likewise lacks merit. A statute is unconstitutionally vague when it "either forbids or requires the doing of an act in terms so vague that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its application." United States v. Pungitore, 910 F.2d 1084, 1104 (3d Cir. 1990) (citation omitted). In Pungitore, the Third Circuit held that RICO's pattern of racketeering requirement was not unconstitutionally vague as applied to the conduct of defendants who were involved in the commission of murder, extortion and illegal gambling offenses in furtherance of an organized crime enterprise. Id. at 1103-04.

Despite Pungitore, defendants contend it is unclear that any element of RICO, especially §1962(d), could withstand a void-for-vagueness challenge in the proper case. Defendants then claim this is one such case because the RICO conspiracy statute, as used here, did not provide them fair notice that "the seemingly benign conduct with which [they are] charged was illegal, and that statute has also allowed the government to prosecute the otherwise lawful behavior of [defendants] based simply on the government's disfavor of the company [they keep]."

The court concludes that defendants' vagueness argument is unfounded. Count Two contains allegations that defendants committed multiple acts of robbery and murder, narcotics trafficking and obstruction of justice in the conduct of the enterprise's affairs. As in Pungitore, this type of activity makes one susceptible to RICO criminal liability. Further, the RICO statute gives defendants notice that the conduct with which they are charged is illegal. Finally, contrary to

6

defendants' bald assertion, there is no indication that the government has prosecuted them merely based on their association with particular individuals who allegedly are disfavored by the government. For these reasons, as well as those discussed above, defendants' motion to dismiss Count Two of the Superseding Indictment will be denied.

### b) **Motion to Strike Specific Overt Acts**

Steele (#1118) has filed a motion to strike from Count 2 of the Superseding Indictment all of the overt acts attributable to him. In support of his request, Steele has adopted the argument set forth in Phillip Turner's Motion to Strike Overt Acts 81 and 82 from Count 2 (#1038), wherein Turner alleges the government will be unable to show that the incidents described in the various overt acts were committed by him in furtherance of the purpose of the enterprise.

There is no basis to strike from Count 2 any overt act attributable to Steele. The jury must determine at trial whether the government has presented evidence to establish beyond a reasonable doubt that Steele is guilty of violating 18 U.S.C. §1962(d) as alleged in Count 2 of the Superseding Indictment. In that regard, the jury will be required to consider, <u>inter alia</u>, whether the government proved that Steele agreed to the commission of two or more racketeering acts by the co-conspirators, not that Steele personally committed any particular overt acts attributable to him as described in Count 2. <u>See United States v. Adams</u>, 759 F.2d 1099, 1116 (3d Cir. 1985) (to be convicted of a RICO conspiracy, defendant need only agree to the commission of two or more predicate acts, not to personally commit them). Accordingly, Steele's motion to strike overt acts will be denied.

7

c) **Motions to Strike Special Sentencing Factor**

Evans (#1080), Pharr (#1040) and Pendelton (#966 adopted by Shealey) have filed motions to strike surplusage from the indictment pursuant to Fed.R.Crim.P. 7(d). The defendants request that the "special sentencing factor" set forth at ¶X of Count Two of the Superseding Indictment, which alleges that each of the defendants "did distribute and possess with intent to distribute 50 grams or more ... of cocaine base, in a form commonly known as crack," be stricken as irrelevant and highly prejudicial. These motions will be denied.

Fed.R.Crim.P. 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." The Advisory Committee note to Rule 7 recognizes that "this rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment . . . which may, however, be prejudicial."

Here, the defendants request that the "special sentencing factor" set forth at ¶X be stricken under Rule 7(d). They argue that it is irrelevant because Count Two and the overt acts set forth therein otherwise do not allege that any of the defendants individually distributed or possessed with intent to distribute 50 grams or more of crack and that this factor is not an element of the offense. They further argue that the inclusion of the special sentencing factor is highly prejudicial and that it is being used solely to "ratchet up" their sentencing exposure.

In United States v. Hedgepeth, 434 F.3d 609, 612 (3d Cir. 2006), the court held that "the court may strike surplusage from the indictment or information when it is both irrelevant (or immaterial) and prejudicial." (emphasis added). Under this conjunctive standard, "information that is prejudicial, yet relevant to the indictment, must be included." Id. Here, the special sentencing factor is relevant and, in fact, necessary under Apprendi v. New Jersey, 530 U.S. 466 (2000), in

· 8

which the court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt."

The prescribed statutory maximum sentence for a violation of §1962 is "not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment)." 18 U.S.C. §1963(a). The special sentencing factor explicitly charges a racketeering activity, *i.e.*, distribution and possession with intent to distribute 50 or more grams of crack cocaine, which, at the time of the offense was committed, provided for a maximum penalty of life imprisonment.[3] 21 U.S.C. §841(b)(1)(A)(iii). Accordingly, the government was required to include the special sentencing factor in the Superseding Indictment, and must submit it to the jury and prove it beyond a reasonable doubt, in order to increase the statutory maximum penalty from not more than 20 years' imprisonment to a maximum of life imprisonment.

Because the special sentencing factor set forth at ¶X is relevant to the Superseding Indictment, it was required to be included, even assuming it is prejudicial as the defendants allege. Hedgepeth, 434 F.3d at 612. The defendants' motions to strike the special sentencing factor as surplusage therefore will be denied.

### 2) **Motions to Dismiss/Strike Other Counts**

### a) Motion to Dismiss Count 24

---

[3]    The Fair Sentencing Act of 2010 (FSA) amended 21 U.S.C. §841(b)(1)(A)(iii) to increase the amount of crack cocaine necessary to trigger a potential maximum sentence of life imprisonment from 50 grams to 280 grams. In United States v. Reevey, 631 F.3d 110 (3d Cir. 2010), the court held that the FSA is not to be applied retroactively because it does not contain an express statement that it is to be applied retroactively. Accordingly, under the Savings Statute, 1 U.S.C. §109, the penalties in place at the time the crime was committed are to be applied. Reevey, 631 F.3d at 114.

✎ AO 72
(Rev. 8/82)

Colbert has filed a motion to dismiss Count 24 of the Superseding Indictment (#738) charging him with possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §924(c)(1)(A)(i). In sum, Colbert alleges that the government cannot prove: (1) that he possessed the weapon set forth in Count 24 on April 10, 2008, because he was incarcerated on that date; (2) that the object in question was a firearm; and/or, (3) that a firearm was possessed in furtherance of the RICO conspiracy.

Sufficiency of the evidence, however, is not a proper basis for seeking dismissal of a count prior to trial. The grand jury found probable cause to support the §924(c) charge set forth at Count 24 of the Superseding Indictment, and the government indicates that it will introduce evidence at trial that will establish that on April 10, 2008, Colbert, through a juvenile identified as K.R., constructively possessed the firearm set forth at Count 24, and that Colbert's constructive possession aided and abetted K.R.'s possession of the firearm in furtherance of the RICO conspiracy. It is for a jury to determine whether the evidence submitted at trial is sufficient to support a finding of guilt beyond a reasonable doubt as to that count, not for the court to make that determination before the government has had an opportunity to present its case. Colbert's motion to dismiss Count 24 will be denied without prejudice to his right to renew it after the government has presented its evidence at trial.

### b) Motion to Strike Counts 26 & 27

Steele (#1118) has filed a motion to strike Counts 26 and 27 of the Superseding Indictment charging him, respectively, with assault with a dangerous weapon in aid of racketeering activity, in violation of 18 U.S.C. §1959(a)(3), and using and carrying a firearm during and in relation to

10

a crime of violence, in violation of 18 U.S.C. §924(c)(1)(A)(iii). Steele has provided no explanation why these two counts should be stricken, other than to incorporate the argument set forth in Phillip Turner's Motion to Strike Overt Acts 81 and 82 from Count 2 of the Superseding Indictment (#1038). Defendant Turner's motion relates only to striking particular overt acts from Count 2, and does not address striking other counts of the Superseding Indictment. Moreover, Turner's motion simply alleges that the government will be unable to show that the defendant committed particular overt acts in furtherance of the enterprise.

To the extent Steele alleges the government will be unable to prove that he is guilty of the charges set forth in Counts 26 and 27, sufficiency of the evidence is not a proper basis for striking a count prior to trial. As previously stated, it is for a jury to determine whether the evidence submitted at trial is sufficient to support a finding of guilt beyond a reasonable doubt as to a particular count, not for the court to make that determination before the government has presented its case. Thus, there is no basis to strike Counts 26 and 27 of the Superseding Indictment, and Steele's motion will be denied.

## MOTIONS RELATED TO RECORDED JAIL CALLS

During the course of the investigation into gang activity in the Northside, thousands of outgoing inmate telephone calls were recorded at the Allegheny County Jail between and among enterprise members and others in which various racketeering activities allegedly were discussed. A number of motions have been filed relating to the monitoring and recording of these telephone calls.

11

Several of the defendants have filed motions to suppress the recorded calls for alleged constitutional violations and/or alleged violations of federal and state wiretapping laws. Some of the defendants also have requested a pretrial hearing, pursuant to United States v. Starks, 515 F.2d 112 (3d Cir. 1975), for a determination of the authenticity, accuracy and audibility of the recordings. In addition, a motion to strike offensive language from the tapes and transcripts also has been filed.

### 1)    Suppression[4]

The court first will address the motions seeking suppression of the recorded jail calls on constitutional grounds. In considering all of the constitutional challenges raised by the defendants in this case, the court starts with the proposition that:

> simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."

Bell v. Wolfish, 441 U.S. 520, 545-46 (1979) (citation omitted).

Accordingly, while prisoners do not forfeit all constitutional protections, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security do justify limitations on the exercise of constitutional rights by inmates. DeHart v. Horn, 227 F.3d 47, 50 (3d Cir. 2000). Thus, a prison inmate "retains [only]

---

[4]    The court finds that an evidentiary hearing is not required with respect to any of the motions seeking suppression of the tape recorded calls because, for the reasons that follow, none of the motions state a colorable claim for relief, see United States v. Brink, 39 F.3d 419 (3d Cir. 1994), and the court is satisfied that all of these motions can be ruled upon as a matter of law without a hearing. The court further notes that at a status conference held on March 2, 2011, counsel were provided the opportunity to request a hearing and/or oral argument on any motion for which the court indicated it did not believe a hearing was required, and no counsel requested a hearing on any of these suppression motions.

AO 72
(Rev. 8/82)

those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Id. at 51; see also Pell v. Procunier, 417 U.S. 817, 822 (1974).

Michael Henson (#1066 adopted by Shealey) has filed a motion to suppress the taped jail calls on the ground that the monitoring and recording of the inmates' telephone calls violated the Fourth Amendment to the United States Constitution. The court finds no Fourth Amendment violation.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991). Accordingly, the Fourth Amendment does not prohibit all searches but only those that are unreasonable. United States v. Price, 558 F.3d 270, 277 (3d Cir. 2009).

In order to avail himself of the protections afforded by the Fourth Amendment, a defendant must demonstrate "that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. . . ." Minnesota v. Carter, 525 U.S. 83, 88 (1998). Because privacy is greatly curtailed by the nature of the prison environment, a detainee's Fourth Amendment rights likewise are diminished. Florence v. Board of Chosen Freeholders, 621 F.3d 296, 301 (3d Cir. 2010); Hudson v. Palmer, 468 U.S. 517, 526 (1984) (holding that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"); Bell, 441 U.S. at 537 ("[l]oss of freedom of choice and privacy are inherent incidents of confinement in such a facility.").

13

As a result, inmates have no expectation of privacy when making telephone calls from a prison telephone. See e.g., Tindell v. Beard, 351 Fed. Appx. 591, 594 (3d Cir. 2009) (prisoners do not have right to privacy during incarceration); United States v. Korbe, 2010 WL 2776337, at *8 (W.D. Pa. July 14, 2010); United States v. Solomon, 2007 WL 927960, at *3 (W.D. Pa. Mar. 26, 2007). Absent a reasonable expectation of privacy, there can be no Fourth Amendment violation from the monitoring and recording of calls made from a prison telephone.

Moreover, even if the defendants could establish an expectation of privacy, there would be no Fourth Amendment violation here because all of the defendants consented to the monitoring and recording of the calls simply by placing them after being put on notice that the calls were subject to monitoring and recording.

"[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Consent must be voluntary, but it may be express or implied, and it need not be knowing or intelligent, and even may be given unintentionally and without knowledge of the right to refuse it. United States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005).

Here, the defendants consented to the monitoring and recording of their calls after being placed on notice, through, inter alia, the Allegheny County Jail inmate handbook (Doc. No. 1287, Ex. 2) and Policy #62 regarding the inmate phone system (Doc. No. 1287, Ex. 3), that all inmate phone calls would be monitored and recorded. United States v. Hodge, 85 Fed. Appx. 278, 281 (3d Cir. 2003) (defendant impliedly consented to taping of phone conversations he made from jail where, inter alia, every call was preceded by message warning caller that call would be recorded and monitored); Korbe, 2010 WL 2776337, at *8 (a prisoner's choice - even a Hobson's choice -

14

to use monitored telephone implies consent to be monitored). Accordingly, Henson's motion to suppress the jail calls will be denied.

Next, Wade (#723 adopted by Colbert & Street) and Anger (#980 adopted by Colbert & Street) have filed motions to suppress the jail telephone calls alleging numerous other constitutional violations, including violations of their rights under the First, Fifth and Fourteenth Amendments. These motions likewise will be denied.

The defendants first argue that the monitoring and recording of their telephone conversations impinged upon their First Amendment rights to free speech and to be free from unjustified government interference with communication. This argument is without merit.

Again, the court starts with the proposition that a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." DeHart, 227 F.3d at 51. The right allegedly violated in this case has been described as the right to communicate with people outside prison walls, and "a telephone provides a means of exercising this right." Almahdi v. Ashcroft, 310 Fed. Appx. 519, 521-22 (3d Cir. 2009) (quotation omitted). However, the telephone is not the only means to communicate with those outside the prison, as the jail has policies in place to receive visitors and to send mail.

Moreover, a prisoner does not have an unfettered right to free speech in prison and that right, like any other right, is "subject to rational limitations in the face of legitimate security interests of the penal institution." Almahdi, 310 Fed. Appx. at 522 (quotation omitted). In this regard, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547. The court is satisfied that

15

the monitoring and recording of all outgoing telephone calls, with the exception of those to counsel, is a rational limitation on an inmate's free speech right which furthers a legitimate interest in prison security. The court finds no First Amendment violation.

The defendants also allege a violation of their Fifth and Fourteenth Amendment right to due process of law. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Likewise, the Fourteenth Amendment prohibits the States from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

The defendants allege that their due process rights were violated because the recording of their calls creates a mechanism enabling the government to obtain discovery which will be used against them at trial without providing reciprocal discovery to them. For this proposition, the defendants rely solely on Wardius v. Oregon, 412 U.S. 470 (1973).

Wardius is wholly inapposite. Therein, the Supreme Court held that it violated due process to require a defendant to provide advance notice of his alibi without the reciprocal right of the defendant to receive notice of any witnesses the government would use to refute an alibi defense. 412 U.S. at 476. Here, it is unclear to what "reciprocal discovery" the defendants feel they are entitled. The government has provided extensive discovery to the defendants and the court finds nothing unfair in the government's use of the recorded telephone calls that would rise to the level of a due process violation in the absence of "reciprocal discovery." See Korbe, 2010 WL 2776337, at *14. Accordingly, the court rejects the defendants' due process challenge.

Next, the defendants argue that the recording of their telephone conversations violated their Fifth Amendment right against self-incrimination by "passively compelling confessions by

exposing subjects to the inherently 'coercive environments' created by custody." This argument is without merit.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the court stated:

> The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.

<u>Id.</u> at 444.

Interrogation in the context of <u>Miranda</u> means "express questioning or its functional equivalent ... any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>United States v. Brownlee</u>, 454 F.3d 131, 146 (3d Cir. 2006) (<u>quoting</u> <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980)).

Here, there simply was no express questioning, or its functional equivalent, by anyone in law enforcement. Instead, the defendants engaged in voluntary discussions with other individuals despite being fully aware that the calls were being monitored and recorded. The fact that they may have made incriminating statements during those conversations does not alter the fact that it was the defendants who chose whom to call and what to discuss in the course of those conversations. The court finds no violation of the right against self-incrimination under these circumstances. <u>See</u> <u>Korbe</u>, 2010 WL 2776337, at *8-9.

Likewise, the court finds no violation of the defendants' Fifth Amendment right to testify, which has been recognized as a corollary to the right against self-incrimination. <u>Harris v. New</u>

17

York, 401 U.S. 222, 230 (1971). The defendants allege that the government's ability to conduct "unlimited extrajudicial eavesdropping" by having "unfettered access" to all of their calls from a prison "inevitably has a chilling effect" on their right to testify.

This argument lacks merit, however, as the Supreme Court has held that when a defendant chooses to take the stand and testify, the government may impeach the defendant through their own statements, even unconstitutionally obtained statements. Harris, 401 U.S. at 225. As the government failed to engage in any action which even arguably resulted in an unconstitutional chilling effect on the defendants' right to testify if they so choose, the court finds no violation of that right. See Korbe, 2010 WL 2776337, at *10. For all of the foregoing reasons, the motions to suppress filed by Anger and Wade will be denied.

Maurice Wallace (#972 adopted by Colbert and Street) has filed a motion to exclude the recorded jail calls for violations of federal and state law. This motion asserts that the monitoring and recording of the inmates' telephone calls violated both Title III of the Federal Wiretap Act, 18 U.S.C. §2510, *et seq.*, and the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §5701, *et seq.* This motion will be denied.

The argument that the recorded calls should be suppressed because they were recorded in violation of Title III of the Federal Wiretap Act is not well-taken. The Federal Wiretap Act prohibits intentional interceptions of wire, oral, and electronic communications and disclosures of the contents of such interceptions knowing, or having reason to know, that they were obtained in violation of the Act. 18 U.S.C. §2511(1). It is not unlawful, however, for a person acting under color of law to intercept such a communication where one of the parties has given prior consent to the interception. 18 U.S.C. §2511(2)(c).

18

Here, as already noted, the defendants consented to the monitoring and recording of their phone calls and there was thus no violation of the Wiretap Act. Bansal v. Pavlock, 352 Fed. Appx. 611, 614 (3d Cir. 2009); see also United States v. Conley, 531 F.3d 56 (1st Cir. 2008) (interception did not violate Wiretap Act where inmate consented to the monitoring of his calls); United States v. Hammond, 286 F.3d 189, 192 (4th Cir. 2002) (same). Moreover, the subsequent disclosure of the defendants' calls for law enforcement purposes was authorized by § 2517 and also did not violate the statute. Bansal, 352 Fed. Appx. at 614; Conley, 531 F.3d at 59–60; Hammond, 286 F.3d at 192–93.

Finally, to the extent the motion seeks suppression of the recorded calls based on any alleged violation of the Pennsylvania wiretap law, that motion is without merit. "It is a general rule that federal district courts will decide evidence questions in federal criminal cases on the basis of federal, rather than state, law." United States v. Williams, 124 F.3d 411, 428 (3d Cir. 1997) (quoting United States v. Rickus, 737 F.2d 360, 363 (3d Cir. 1984)); see also Virginia v. Moore, 553 U.S. 164, 178 (2008) ("[i]t is not the province of the Fourth Amendment to enforce state law.").

Accordingly, even assuming without deciding that the monitoring and recording of the calls did not comply with state law, suppression would not be appropriate unless the monitoring and recording also violated federal law and suppression would be an appropriate remedy for such a violation. See Williams, 124 F.3d at 425-28 (assuming disclosure of wiretapped calls violated state law, such violation did not warrant suppression in federal prosecution.) As shown above, there was no federal law violation, either constitutional or statutory, for which suppression would be appropriate. The motion to suppress therefore will be denied.

AO 72
(Rev. 8/82)

### 2)     **Authenticity and Accuracy**

Maurice Wallace (#958 adopted by Colbert, Street & Shealey) and Evans (#1049 adopted by Colbert) have filed motions for a pretrial determination of the admissibility of the recorded telephone calls on issues such as authenticity, accuracy and identification. In addition, Michael Henson (#1070 adopted by Evans, Pharr, Steele & Shealey) has filed a motion for an audibility hearing in regard to the recorded calls.

The court will hold these motions in abeyance and reserve ruling on them pending further consideration of the necessity for a pretrial hearing on authenticity.

### 3)     **Discovery Regarding Phone Calls**

Colbert (#1054 adopted by Shealey) has filed a discovery motion relating to the intercepted telephone calls. Specifically, this motion requests that the government disclose any evidence relating to consent to the recording of the telephone calls at the Allegheny County Jail, any policy and/or written procedure in place at the Allegheny County Jail regarding the recording of telephone calls at the jail, and the names of persons who monitored, recorded and had custody of the recordings prior to the transfer of the recordings to the federal government.

As the government already has complied with this discovery request, the motion will be denied as moot.

### 4)     **Designate Calls for Use At Trial**

Shealey, Evans, Pharr and Steele have adopted a motion filed by Terrell Henson (#949) requesting that the government designate the recorded jail telephone conversations it intends to use

at trial. The government already has provided defendants with transcripts of all the recorded jail conversations in this case, and it is not otherwise obligated to specifically list for defense counsel the telephone calls which it may rely upon at trial. Accordingly, defendants' request for the government to designate calls for use at trial will be denied.

### 5) **Motion to Strike Offensive Language**

Maurice Wallace (#735) has filed a motion to strike offensive language from the audio tapes and transcriptions of the recorded jail calls. This motion, which has been adopted by Shealey, requests an order requiring the government to redact the words "nigga" and "nigger" and their plural forms from all of the audio tapes and transcriptions and other documents it intends to introduce at trial. The motion alleges that these terms are used "incessantly" throughout the recordings by the defendants and those to whom they are speaking and that the presentation of this language to the jury would serve no probative purpose and would be "irreparably prejudicial." This motion will be denied.

In United States v. Price, 13 F.3d 711, 720 (3d Cir. 1994), the court held that the admission of taped conversations containing racial epithets which were "extremely insulting and inflammatory" to members of the jury was not improper where it would have been virtually impossible to redact the offensive language without altering the substance of the conversations. See also United States v. Solomon, 2007 WL 587805 (W.D. Pa. Feb. 20, 2007) (noting that recorded statements containing racial slurs and/or offensive language have been admitted even when the slurs had no probative value); United States v. Whitaker, 372 F. Supp. 154, 163-64 (M.D. Pa. 1974) aff'd 503 F.2d 1400 (3d Cir. 1974) (playing conversations with offensive

21

language could not have been avoided without rendering recordings incomprehensible).

Likewise in this case the government submits that the offensive language that the defendants seek to have redacted is so frequent in the tapes and transcripts that redaction cannot be accomplished without altering the substance of the conversations. In seeking to have the offensive language redacted, the defendants themselves recognize that the words are uttered "incessantly" throughout the recorded conversations. Under these circumstances, the court believes it would be impossible to attempt to have these words redacted without at least altering the substance of the conversations, if not possibly rendering them incomprehensible altogether.

In addition, any potential prejudice that possibly could result from the use of the offensive language can be minimized through voir dire and cautionary instructions during trial. See Whitaker, 372 F. Supp. at 163-64. Accordingly, the motion to strike offensive language will be denied.


## SUPPRESSION MOTIONS

### 1)    Motions to Suppress Physical Evidence[5]

Evans (#1048) and Street (#1105) have filed motions to suppress physical evidence seized from their jail cells. Evans alleges that the search of his cell at SCI-Pittsburgh was unreasonable because the information contained in the search warrant affidavit was stale. Street alleges that the search of his cell at the Allegheny County Jail was conducted without a search warrant. Both motions assert violations of the Fourth Amendment to the United States Constitution and seek

---

[5]    The court finds that an evidentiary hearing is not required with respect to the motions to suppress physical evidence because they do not state a colorable claim for relief, see United States v. Brink, 39 F.3d 419 (3d Cir. 1994), and the court is satisfied that they can be ruled upon as a matter of law.

suppression of all items seized from their cells. These motions are without merit.[6]

As noted above, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. In order to avail himself of the protections afforded by the Fourth Amendment, a defendant must demonstrate "that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. . . ." Carter, 525 U.S. at 88.

Here, neither Evans nor Street had a reasonable expectation of privacy in their jail cells. "The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." Hudson, 468 U.S. at 526. Accordingly, as a matter of law, it long has been recognized that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Id.; see also Shakur v. Coelho, 2011 WL 1289128 (3d Cir. Apr. 6, 2011); Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (prisoners do not have a Fourth Amendment right to privacy in their cells).

Because the Fourth Amendment does not apply in the context of a search of a prisoner's cell, the motions to suppress physical evidence seized from their jail cells filed by Evans and Street, as well as Evans' *pro se* supplemental motion to suppress, will be denied.

---

[6] Evans also has filed a *pro se* "supplement to motion to suppress physical evidence" (#1349) in which he asserts various other Fourth Amendment violations related to the search of his cell. Initially, the court notes that it is under no obligation to consider *pro se* motions filed by represented litigants. United States v. D'Amario, 2009 WL 1154218 (3d Cir. Apr. 30, 2009). In any event, Evans' *pro se* motion likewise is without merit for the reasons set forth herein.

AO 72
(Rev. 8/82)

2)    **Motions for Notice of Suppressible Evidence**

Evans, Street and Colbert have joined in motions filed by Vance Pearson (#687), Phillip Turner (#1009) and Karl Anger (#983) requesting notice from the government of its intent to use any evidence that may be the subject of a suppression motion. In response, the government has provided notice of five categories of such evidence, which include the following: (1) any firearm, controlled substance or other item of evidence seized in any incident for which defendants have been provided reports; (2) any statements provided to defendants, such as tape recordings between confidential informants and defendants, jail telephone calls and transcripts of those calls; (3) evidence obtained as a result of the execution of search warrants, including those executed in the jail cells of certain defendants; (4) evidence seized as a result of the execution of search warrants referred to in reports provided to defendants; and (5) all photographic lineups provided to defendants. The government has complied with defendants' request for notice of evidence arguably subject to suppression, and these motions will be denied as moot.

## SEVERANCE MOTIONS

Colbert, Evans and Shealey seek severance of their trials from those of their co-defendants.[7] In essence, these motions seek severance on one of two grounds[8]: (1) relief from prejudicial joinder

---

[7]    Colbert has filed a motion to sever (#710) and also has adopted the motion for severance filed by Pendelton (#967). Evans has adopted the motion for severance filed by Underwood (#987) and Shealey has adopted the motion requesting relief from prejudicial joinder filed by Maurice Wallace (#1047).

[8]    Both Colbert (#701) and Maurice Wallace (#1047) raised another potential ground for severance which in both instances has become moot. Both argued for severance on the ground that they intended to call fellow co-defendants as witnesses to provide exculpatory evidence and that they could only do so if they were tried separately. However, the co-defendants identified by both Colbert and Wallace, as well as Wallace himself, all since have entered guilty pleas.

✎AO 72
(Rev. 8/82)

under Fed.R.Crim.P. 14(a); and, (2) possible violations of the rule enunciated in Bruton v. United States, 391 U.S. 123 (1968), relating to extrajudicial confessions of co-defendants who choose not to testify that may implicate another defendant's Sixth Amendment right to confront and cross-examine witnesses. For the following reasons, all of the severance motions will be denied.

Fed.R.Crim.P. 8(b) permits joinder of multiple defendants in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Although none of the defendants have alleged improper joinder under Rule 8(b), they do allege prejudice from joinder.

Relief from prejudicial joinder is authorized pursuant to Fed.R.Crim.P. 14, which provides in pertinent part:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed.R.Crim.P. 14(a).

The foregoing rules and the jurisprudence developed thereunder reflect "a preference in the federal system for joint trials of defendants who are indicted together, because joint trials promote efficiency and serve the interest of justice by avoiding the scandal and the inequity of inconsistent verdicts." United States v. Balter, 91 F.3d 427, 432 (3d Cir. 1996) (quoting Zafiro v. United States, 506 U.S. 534, 537 (1993) (internal citations omitted).

"In addition, joint trials of defendants charged under a single conspiracy aid the finder of fact in determining the full extent of the conspiracy and prevent the tactical disadvantage to the government from disclosure of its case." United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir.

25

1996) (internal quotations and citations omitted).

In light of this preference for joint trials, severance under Rule 14 is to be granted "only if there is a serious risk that a joint trial will compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 538-39; see also Balter, 91 F.3d at 432; Voigt, 89 F.3d at 1094.

A defendant seeking relief under Rule 14 has the burden to demonstrate that the failure to grant a severance will result in "real not fanciful" prejudice. United States v. Segal, 534 F.2d 578, 583 (3d Cir. 1976). Prejudice cannot be assumed merely because all evidence adduced may not be germane to any particular defendant or because some evidence likely to be admitted may be more damning to one defendant than another. Balter, 91 F.3d at 433 (quoting United States v. Console, 13 F.3d 641, 655 (3d Cir. 1993)).

Similarly, establishing the mere possibility that evidence may be admitted against one defendant which would be inadmissible against another falls short of the required showing because the potential for certain evidence to be admitted against one defendant and not another is a feature common in all joint trials. United States v. Kenny, 462 F.2d 1205, 1218 (3d Cir. 1972).

Applying the foregoing law to this case it is clear that severance is not appropriate. None of the defendants has established that a joint trial of the remaining six defendants would compromise any specific trial right or prohibit the jury from making a reliable judgment as to guilt or innocence. Many of the concerns expressed in the motions filed by Underwood and Maurice Wallace, and adopted by others, in arguing for separate trials, in particular the inability of the jury to compartmentalize the evidence, since have been alleviated by the fact that only 6 defendants remain to be tried as opposed to the 27 who were in the case at the time the severance motions

were filed.

Furthermore, none of the defendants has identified any concrete impediment which would prohibit the jury from compartmentalizing the evidence admitted against each defendant where such a distinction is necessary. As there is no reason to believe that a jury will not be able to compartmentalize the evidence against each of the defendants from the evidence against the others, the defendants have failed to meet their burden of showing the risk of clear and substantial prejudice. Moreover, any danger that the jury might confuse evidence relating to one defendant but not the others can be prevented with a proper instruction that the jury must give separate consideration to the evidence against each defendant. Zafiro, 506 U.S. at 539 (recognizing that limiting instructions often suffice to cure any risk of prejudice).

In addition, the government indicates that it will be able to adduce some evidence linking each of the defendants to the alleged RICO conspiracy, and it follows that evidence of other co-conspirators' overt acts may well be admissible against each member of the conspiracy, even if the remaining defendants were tried separately. See United States v. Dickens, 695 F.2d 765, 779 (3d Cir. 1982) (where government presented some evidence linking each defendant to a conspiracy, neither a disparity in the evidence against the particular members nor the introduction of evidence more damaging to one defendant than another warranted relief under Rule 14).

In the absence of any evidence of real, not fanciful, prejudice that would result from a joint trial, and in light of the preference for joint trials in order to promote efficiency and to serve the interests of justice, the court finds that severance under Rule 14 is not appropriate in this case.

The motions filed by Maurice Wallace and Pendelton also request severance on the basis of potential issues arising under Bruton v. United States, 391 U.S. 123 (1968), in which the

27

Supreme Court held that a defendant's Sixth Amendment right to confront the witnesses against him is violated when a facially incriminating statement of a non-testifying co-defendant is offered into evidence at a joint trial, even if the jury is instructed to consider the statement only as evidence against the defendant who made the statement.

In this regard, the government will be required to provide to the court and to counsel for all defendants any statements of any co-defendant before it seeks to admit such statement at trial. This will give the court the opportunity to review the statement and determine whether it can be redacted or whether it should be inadmissible. Under these circumstances, any potential prejudice arising from a joint trial will be alleviated.

Accordingly, the motions for severance will be denied.

## DISCOVERY MOTIONS

### 1) **Bill of Particulars**

Colbert (#699 adopted by Shealey & Street), Evans (#1050), Street (#1099), Pharr (#971), Wade (#719 adopted by Colbert & Street), Jenkins (#805 adopted by Street), Steele (#1108) and Shealey (#732) all have filed motions for a bill of particulars alleging that the Superseding Indictment lacks sufficient particularity as to the nature, scope and time period of the charges against them, particularly as to Count Two, and requesting, inter alia, specific dates and locations relating to their alleged activities, the names and addresses of potential witnesses, specific acts and statements of themselves, and acts or statements made by others that may be imputed to them. These motions will be denied.

AO 72
(Rev. 8/82)

A bill of particulars is a "'formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor.'" United States v. Urban, 404 F.3d 754, 771 (3d Cir. 2005). The purpose of a bill of particulars is to inform the defendant adequately of the nature of the charges brought against him so as to enable him to prepare his defense, to avoid surprise during the trial, and to protect him against a second prosecution for an inadequately described offense. Id. The granting of a bill of particulars is within the discretion of the district court. United States v. Eufrasio, 935 F.2d 553, 575 (3d Cir. 1991).

A bill of particulars, unlike discovery, is not intended to provide a defendant with the fruits of the government's investigation, but is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation. United States v. Smith, 776 F.2d 1104 (3d Cir. 1985). Here, the information contained in the Superseding Indictment is more than sufficient to place the defendants on notice of that with which they have been charged and to permit them to conduct their own investigation and adequately to prepare a defense. The defendants' requests for the more specific "when, where and how" of the charges against them are tantamount to requests for wholesale discovery of the government's evidence which is not a proper purpose for a bill of particulars. See United States v. Armocida, 515 F.2d 49 (3d Cir. 1975).

Moreover, the government already has provided each of the defendants with voluminous discovery, including, inter alia, tapes of all of the recorded jail calls as well as written transcripts of all of those calls, which provides greater and more specific information as to the evidence against each defendant. In addition, with approximately one month remaining until trial, the government soon will be turning over even more information, including Brady impeachment

material and Rule 404(b) evidence as directed by the court, and will be encouraged to turn over material under the Jencks Act in advance of trial.

It long has been recognized that in considering a motion for a bill of particulars, the court may consider any information conveyed to the defendant beyond the allegations of the indictment, and that "access to discovery further weakens the case for a bill of particulars." Urban, 404 F.3d at 772. Given the state of the record at this stage of the proceedings, there is more than adequate information on the particulars of the offenses charged against each defendant to permit them to prepare for trial. Accordingly, all of the motions for bill of particulars will be denied.

### 2) **Rule 16 Discovery and Brady Materials**

All of the defendants remaining in the case either have filed or have adopted a number of extensive discovery motions seeking disclosure of materials under Fed.R.Crim.P. 16(a) and/or pursuant to Brady and its progeny.[9]

Generally, governmental disclosure of evidence in criminal cases is governed by Fed.R.Crim.P. 16(a)(1). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1), "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act (18 U.S.C. §3500) and materials

---

[9]    The discovery motions were filed by: Colbert (#176 & #180), Evans (#1051), Street (#1132), Vallon Wallace (#1021 adopted by Street), Maurice Wallace (#702 adopted by Colbert, Street & Shealey), Pharr (#742), Pearson (#685 adopted by Street, Shealey & Steele), Turner (#1004 adopted by Evans & Street), Steele (#1109) and Anger (#977 adopted by Colbert).

available pursuant to the "Brady doctrine." Id.

In response to the discovery motions, the government has acknowledged its responsibilities and obligations under Rule 16(a) and the Brady doctrine and has indicated that it already has complied and will continue to comply with those requirements. As the government is cognizant of its obligations, the discovery motions will be granted to the extent they seek materials falling within the scope of Rule 16 and the Brady doctrine, and the following discovery order will be entered:

♦ The government shall disclose all Rule 16(a) material and Brady exculpatory material **forthwith**;

♦ The government shall disclose all Brady impeachment material no later than **August 12, 2011**;

♦ The government shall disclose all Jencks material in accordance with 18 U.S.C. §3500(b), but with encouragement to disclose such material no later than **August 12, 2011**; and

♦ To the extent the discovery motions seek any other material falling outside the scope of Rule 16, Brady, or the Jencks Act, they will be denied.

### 3)  **Rule 404(b) Notice/Exclusion**

Colbert (#173 & #175), Evans (#1052), Street (#1103), Vallon Wallace (#1023 adopted by Street), Pharr (#745), Steele (#1106) and Anger (#976 adopted by Street) have filed motions requesting that the government disclose any evidence of other crimes, wrongs or acts of uncharged misconduct that the government may seek to offer under Federal Rule of Evidence Rule 404(b).

Rule 404(b) permits the admission of evidence of other crimes, wrongs or acts for certain enumerated purposes, provided that, upon request by the accused, the government shall provide

31

reasonable notice in advance of trial of the general nature of any such evidence it intends to introduce at trial. In order to be admissible under Rule 404(b), (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rules 401 and 402; (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted. United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002).

The government has acknowledged its responsibility to provide advance notice of the general nature of any other crimes, wrongs or acts it intends to offer at trial but proposes that it be permitted to provide notice under Rule 404(b) ten days prior to trial. However, the court believes a more reasonable time frame for providing Rule 404(b) notice is at the same time as the government is to disclose all Brady impeachment material.

Accordingly, all of the 404(b) motions will be granted and an order will be entered requiring the government to provide notice of the general nature of any Rule 404(b) evidence it intends to offer no later than August 12, 2011.[10]

### 4) **Early Disclosure of Jencks Act material**

Underwood (#985 adopted by Colbert), Evans (#1076), Street (#1101), Pharr (#743), Wade

---

[10]      Street has adopted a motion in limine filed by Vallon Wallace (#1029) to exclude any reference at trial to defendant's criminal history, whether offered under Rule 404(b) or Rule 609(a), because the probative value of such evidence is substantially outweighed by the danger of prejudice pursuant to Rule 403. To the extent Street seeks *exclusion* of Rule 404(b) or Rule 609(a) evidence at this time, his motion will be denied without prejudice as premature. Further, regarding Steele's request for a pretrial hearing on the admissibility of Rule 404(b) evidence, that request will be denied. It is preferable to resolve Rule 404(b) objections in conjunction with the factual context of the case. See United States v. Giampa, 904 F. Supp. 235, 284 (D.N.J. 1995) ("Generally, objections as to the admissibility of prior bad acts under Rule 404(b) are properly asserted during trial, not at the pretrial stage.").

(#718 adopted by Colbert & Street) and Shealey (#730 adopted by Colbert & Street) have filed motions requesting early disclosure of Jencks Act material.

The Jencks Act, 18 U.S.C. §3500(b), requires the government to disclose prior recorded statements of its witnesses, when related to the subject matter of their testimony, after each witness testifies on direct examination. United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001). According to 18 U.S.C. §3500(a), "no statement or report in the possession of the United States which was made by a government witness or prospective government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."

There is no authority by which courts can order the government to provide Jencks Act statements prior to the time a witness has testified on direct examination at trial. Accordingly, the motions for early disclosure of Jencks material will be denied. However, the court will enter an order encouraging the government to provide the defendants these materials by August 12, 2011.

### 5) **James Hearing**

Underwood (#993 adopted by Colbert & Evans), Michael Henson (#1074 adopted by Pharr & Steele), Ford (#960 adopted by Street, Pharr & Shealey), Vallon Wallace (#1026 adopted by Street), Clark (#933 adopted by Pharr) and Turner (#1011 by Evans) have filed motions for a pretrial James[11] hearing to determine the existence of a conspiracy and the admissibility of any statements of alleged co-conspirators under the exception to the hearsay rule set forth at

---

[11]    United States v. James, 590 F.2d 575 (5th Cir. 1979)(expressing preference requiring government to establish at a preliminary hearing the existence of a conspiracy and each defendant's participation in it).

Fed.R.Evid. 801(d)(2)(E).[12]

In this circuit, there is no authority for holding a separate hearing on the admissibility of co-conspirator's statements. See United States v. Ammar, 714 F.2d 238, 246-47 (3d Cir. 1983). Furthermore, "the control of the order of proof at trial is a matter committed to the discretion of the trial judge," United States v. Gambino, 926 F.2d 1355 (3d Cir. 1991), and it is well settled that a hearing need not be conducted in every case where the government seeks to introduce co-conspirators' statements against a defendant. Ammar, 714 F.2d at 247.

The government suggests that a pretrial determination as to the admissibility of co-conspirator statements is neither practical nor necessary in this case. Instead, the court should look to the trial testimony as a whole in determining whether there was a conspiracy, whether the defendants and the declarants were members of that conspiracy and whether the statements were made during and in furtherance of the conspiracy. See United States v. DePeri, 778 F.2d 963, 981 (3d Cir. 1985) (in complex trials involving a large amount of interrelated testimony, it may be necessary to admit statements provisionally, subject to a later finding of a conspiracy established by the preponderance of independent evidence).

The government's position is reasonable and the defendants' motions for a pretrial James hearing will be denied.

---

[12]    Pursuant to Rule 801(d)(2)(E), "a statement is not hearsay if . . . the statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), the government must establish by a preponderance of the evidence: (1) that there was a conspiracy involving the defendant and the non-offering party; and (2) that the statement was made during and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 173-75 (1987).

AO 72
(Rev. 8/82)

### 6)    **Retain Rough Notes**

Evans (#1084), Street (#1111), Pharr (#744), Turner (#1001 adopted by Street) and Jenkins (#646 adopted by Colbert & Street; #647 adopted by Colbert, Evans & Street) have filed motions to require federal and state agents and law enforcement officers to retain rough notes and writings which may constitute Brady or Jencks materials.

The government has indicated that it is aware of its obligation to retain these materials pursuant to United States v. Ramos, 27 F.3d 65 (3d Cir. 1994), Ammar v. United States, 714 F.2d 238 (3d Cir. 1983) and United States v. Vella, 562 F.2d 275 (3d Cir. 1977). Accordingly, the court will enter an order granting the motion and requiring the government to preserve any such materials.

### 7)    **Plea Bargains, Preferential Treatment, etc.**

Colbert (#178), Evans (#1078), Vallon Wallace (#1025 adopted by Street), Turner (#1016 & 1018 adopted by Street), Jenkins (#645 adopted by Evans) and Steele (#1112) have filed motions pursuant to Giglio v. United States, 405 U.S. 150 (1972), specifically requesting that the government disclose any plea bargains, preferential treatment, promises made to potential witnesses, grants of immunity or any other such promises of, or agreements for, leniency. In addition, a number of other defendants have made such requests in their general motions for discovery.

These motions in effect request Brady impeachment material and are the proper subject of discovery under Giglio. Accordingly, the motions will be granted. Given the nature of this case, disclosure of such material by August 12, 2011, will be sufficient to protect the defendants' due

AO 72
(Rev. 8/82)

process rights and to ensure that trial delay is avoided.

8)    **Forensic Analysis**

Evans (#1053) has filed a motion for forensic analysis of firearms in which he requests an order requiring the government to disclose the results of any forensic analysis performed on the 9 mm Highpoint handgun that he is alleged, in Overt Act 172 and in Count 8, to have possessed on April 4, 2006.

In its response, the government indicated that a ballistics test and DNA test were performed on the firearm by the State Police Laboratory and that the government was in the process of obtaining copies of those reports. The government subsequently having indicated to the court that those reports in fact were obtained and disclosed, Evans' motion will be denied as moot.

9)    **Produce Grand Jury Proceedings**

Evans (#1088) has filed a motion to produce grand jury proceedings in which he requests an order requiring the government to disclose grand jury testimony and proceedings in order to "ensure that all testimony and evidence presented to the grand jury, even hearsay evidence, was accurate." This motion will be denied.

It is settled federal policy that the grand jury system requires secrecy of grand jury proceedings. See Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218-19 (1979). Federal Rule of Criminal Procedure 6(e) is intended to preserve secrecy by preventing the disclosure of matters that occur before a grand jury. Secrecy is not absolute, however, and Rule 6(e) has built-in exceptions.

One such exception, which is set forth in Rule 6(e)(3)(E)(i), lifts the veil of secrecy where disclosure of a "grand-jury matter" is directed by a court "preliminary to or in connection with a judicial proceeding." In balancing the secrecy requirement with the need for a grand jury matter, the Supreme Court has held that the party seeking the matter must show that the material he seeks is needed to avoid a possible injustice in another judicial proceeding, that the need to disclose is greater than the need for continued secrecy and that his request is structured to cover only the material that is needed. Douglas Oil, 441 U.S. at 222. Thus, the party seeking the transcript must set forth a "particularized" need for the disclosure. United States v. Procter & Gamble Co., 356 U.S. 677, 683 (1958).

Here, Evans has failed to demonstrate a particularized need for any grand jury matter, nor has he identified any factor that would justify this court in exercising its discretion to order production of any grand jury matter. Instead, defendant broadly seeks all "grand jury testimony and proceedings" without identifying any specific matter or advancing any specific need or alleging any specific potential injustice. Accordingly, Evans' motion to produce grand jury proceedings will be denied.


### 10)   Disclose Identity of Confidential Informants

Street (#1100) and Turner (#1014 adopted by Evans & Street) have filed motions requesting that the government disclose the identity of confidential informants who have participated in the investigation of this case or who will be called to testify at trial.

It is well-settled that "in no event is the government required to divulge the identity of its witnesses in a noncapital case." United States v. Addonizio, 451 F.2d 49, 62 (3d Cir. 1971).

AO 72
(Rev. 8/82)

Moreover, while the government under certain circumstances does have a duty to disclose the identity of a confidential informant who will not testify at trial, see Roviaro v. United States, 353 U.S. 53 (1957) and United States v. Jiles, 658 F.2d 194 (3d Cir. 1981), the government indicated in its response that the confidential informants in this case are expected to testify at trial, and the Roviaro analysis therefore is inapplicable.[13] See United States v. Casseus, 282 F.3d 253, 257 (3d Cir. 2002).

As the confidential informants will testify at trial in this noncapital case, the government has no duty to disclose the identity of those individuals. Accordingly, defendants' motions will be denied.

### 11) **List of Government Witnesses & "Rap" Sheets**

Steele (#1116) has filed a motion requesting that the government provide a list of its potential witnesses, including a "rap sheet" on each witness. As discussed above, the government is not obliged to provide a witness list in a non-capital case, except as otherwise required by the Jencks Act relative to witness statements. See Addonizio, 451 F.2d at 62; see also 18 U.S.C. §3432 (a person charged with a capital offense must be furnished with a list of witnesses at least three days prior to trial). Accordingly, Steele's motion will be denied.

---

[13] Even assuming arguendo that the Rovario analysis applies, defendants bear the burden of demonstrating the need for disclosure of the identity of the confidential informants. See Jiles, 658 F.2d at 197. Here, other than broadly claiming that disclosure should be made, defendants have failed to demonstrate any such need.

AO 72
(Rev. 8/82)

## 12) **Leave to Review Co-operating Witnesses' PSIR**

Shealey (#724) (adopted by Colbert & Street) has filed a motion for leave to review the presentence investigation reports of witnesses who are cooperating with the government. Shealey states that he is unaware of who will testify against him at trial, but knows that the government has relied upon at least three confidential informants in connection with this case. Shealey seeks to obtain Brady impeachment material from the presentence reports that have been completed for any confidential informant who will testify at trial for the government, and requests that this court conduct an *in camera* review of those presentence reports.

The government has responded that it will obtain permission from the appropriate court to disclose to defendants any information contained in the presentence reports of cooperating witnesses that constitutes Brady material. See Document No. 1287 at 79. The government contends, however, that defendants are not entitled to obtain complete copies of the presentence reports,[14] and the court need not conduct an *in camera* review of the presentence reports because defendants have not established that such review is necessary. The court agrees that *in camera* review is not required.

According to Local Criminal Rule 32C.1., presentence reports are confidential court documents. As such, "courts have been very reluctant to give third parties access to the presentence investigation report prepared for some other individual or individuals" absent "some showing of special need." United States Dep't of Justice v. Julian, 486 U.S. 1, 12 (1988); see also, United States v. Blanco, 884 F.2d 1577, 1578 (3d Cir. 1989) ("[t]here is a general presumption that the

---

[14] Shealey indicates in his supporting brief that "[w]holesale disclosure of one or more [presentence report] is not sought through this motion." See Document No. 725 at 8.

AO 72
(Rev. 8/82)

courts will not grant third parties access to the presentence reports of other individuals").

In light of the confidential nature of presentence reports, a threshold showing must be made to obtain *in camera* review by the district court. "[A] district court is under no duty to conduct an *in camera* examination of a requested PSR unless the accused has first clearly specified the information contained in the report that he expects will reveal exculpatory or impeachment evidence." United States v. Trevino, 89 F.3d 187, 192 (4th Cir. 1996).

Here, Shealey has not made a showing to justify *in camera* review by the court. Rather than specifically identifying information in the presentence reports that he expects will reveal Brady material, Shealey speculates that the following categories of information typically contained in presentence reports may contain impeachment material: rap sheets, prior misconduct, role in the offense, drug and alcohol abuse, mental health history and history of court intervention. These broad requests for impeachment material do not establish any special need which would justify this court to review *in camera* the cooperating witnesses' presentence reports, thus defendants' request for *in camera* review will be denied.[15] As the government has acknowledged, however, it will disclose to defendants any information contained in the presentence reports of cooperating witnesses that constitutes Brady material, and such disclosure shall be made in accordance with the court's order to provide defendants with Brady impeachment material by August 12, 2011.

---

[15] Colbert and Street, who have joined Shealey's motion for leave to review presentence investigation reports, likewise have failed to establish any special need which would justify this court to review *in camera* the cooperating witnesses' presentence reports.

## MOTIONS RELATING TO JURY SELECTION

### Individual Voir Dire & Jury Sequestration

Vallon Wallace (#1027 adopted by Street) has filed a motion for individual voir dire and sequestration of jurors during voir dire. The motion requests that voir dire be conducted individually for each prospective juror outside the presence of the entire jury panel in order to ensure the "candor and honesty" of the jurors relating to "sensitive" and "potentially embarrassing" questions.

The court agrees with the government that such a voir dire procedure is unnecessary and would be unduly burdensome and time consuming. If sensitive and potentially embarrassing issues arise, they can be dealt with at sidebar. Defendant's motion will be denied.

## EVIDENTIARY MOTIONS

### 1) Compel Proffer of Government's Expert Witness Testimony

Pharr (#1032 adopted by Shealey), Turner (#1012 adopted by Street) and Shealey (#730) have filed motions to compel the government to provide a proffer as to any expert witness testimony it intends to present at trial regarding gang history, organization, structure and practices. By letter dated June 8, 2011, the government provided defendants with the requested proffer, thus defendants' motions will be denied as moot.[16]

---

[16] Colbert and Street have joined in a motion in limine filed by Vallon Wallace to prohibit the government from introducing expert testimony on the issues of gang behavior and drug trafficking conduct (#1022). Shealey raised a similar issue in his motion for a hearing on the admissibility of opinion testimony and supporting brief (#1813). On August 1, 2011, the court entered a Memorandum Order (#1898), in which it denied without prejudice Shealey's motion requesting a pretrial admissibility hearing concerning the prospective testimony of Detective Amy Mattia and Trooper Michael C. Warfield, who the government may offer as expert witnesses at trial. The Memorandum Order provided that Shealey may raise at trial the

AO 72
(Rev. 8/82)

## 2) **Exclude Cooperating Witness Testimony & Request for Reliability Hearing**

Shealey (#726) has filed a motion seeking to exclude the testimony of an individual he believes is cooperating with the government and who will testify against him at trial, as well as any other cooperating witnesses who may testify against him. Shealey asserts that the testimony of any cooperating witnesses who will receive compensation or leniency is so unreliable that it lacks probative value and will be unduly prejudicial. Shealey also requests that the court hold a pretrial reliability hearing and require the government to establish the reliability of all cooperating witnesses who may testify against him.

The issues Shealey has raised in his motion in essence pertain to the credibility of cooperating witnesses. The government is permitted to present testimony by witnesses who have entered into plea bargain agreements with the government or who have received some other type of benefit. See e.g., Third Circuit Model Criminal Jury Instructions, §4.19 (stating that the government is permitted to present the testimony of someone who has reached a plea bargain with the government or received a benefit from the government, but that testimony should be considered with great care and caution).

In connection with disclosure of Brady impeachment material, the government is required to provide Shealey with information concerning any compensation or promises of leniency afforded to cooperating witnesses. Shealey may, in turn, use that information to cross-examine government cooperating witnesses in an attempt to impeach their credibility. The jury will be required to weigh the credibility of the cooperating witnesses' testimony in accordance with the court's instructions

---

issues asserted in his motion regarding the government's proposed expert testimony. Likewise, Wallace's motion in limine seeking to exclude expert testimony on gang and drug matters which has been adopted by Colbert and Street will be denied without prejudice to their right to raise the issue during trial.

42

regarding that matter. For these reasons, the court will deny Shealey's motion to exclude the testimony of cooperating witnesses, as well as his request for a reliability hearing.

### 3)      **Prohibit Jencks in Presence of Jury**

Street (#1110) has filed a motion to prohibit the government from turning over Jencks material in the jury's presence. Evans has adopted a similar motion filed by Terrance Clark (#935). Neither Street nor Evans have cited any authority to support their request that the government should be prohibited from providing defense counsel with Jencks material in the jury's presence. Moreover, because the court encourages the government to turn over Jencks material by August 12, 2011, the defendants' motions regarding disclosure of such material in the jury's presence will be denied.

## MISCELLANEOUS MOTIONS

### 1)      **Motions to Adopt/Join Co-Defendant Motions**

Colbert (#736, 962, 1060 & 1119), Street (#1104, 1107 & 1113), Pharr (#970 & 1758), Steele (#1114 & 1765) and Shealey (#728, 969, 1124 & 1754) all have filed motions to adopt/join specific motions filed by their co-defendants. All of these motions will be granted.

### 2)      **Leave to File Additional Pretrial Motions**

Colbert (#174), Michael Henson (#1083 adopted by Evans), Street (#1102), Vallon Wallace (#1028 adopted by Street), Pharr (#1041), Turner (#1020 adopted by Evans) and Anger (#986 adopted by Colbert) have filed motions for leave to file additional pretrial motions. In light of the

43

fact that all of the defendants have had more than ample opportunity to file pretrial motions, and all have taken advantage of that opportunity, and also given that the trial of this matter is scheduled for September 12, 2011, all of these motions will be denied.[17]

### 3)    Pro Se Notices of Alleged Constitutional Violations

Street (#1278) and Pharr (#1280) have filed pro se "notices" setting forth numerous alleged violations of their constitutional rights. Both Evans and Street are represented by competent counsel who have filed numerous motions on their behalf and, as noted earlier, the court is under no obligation to consider *pro se* motions filed by represented litigants. D'Amario, 2009 WL 1154218, at *764. Nevertheless, the court has reviewed the allegations set forth in the *pro se* notices filed by Evans and Street and finds all of them to be wholly without merit.

An appropriate order will follow.

Gustave Diamond
United States District Judge

Date: _August 3, 2011_

---

[17]    Of course, to the extent the defendants wish to file motions in limine as to evidentiary matters or other trial related matters, they will be permitted to do so.

44

cc: Charles A. Eberle
Troy Rivetti
Assistant U.S. Attorneys

Kevin Rosenberg
Trial Attorney
U.S. Department of Justice, Criminal Division

All defense counsel of record

AO 72
(Rev. 8/82)